UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIDALYS PINO,<br><br>    Plaintiff,<br><br>v.<br><br>CHIPOTLE SERVICES, LLC,<br><br>    Defendant. | Civil Case No.: 18-CV-1855<br><br>NOVEMBER 13, 2018 |

## NOTICE OF REMOVAL

Defendant CHIPOTLE SERVICES, LLC ("Chipotle"), by and through undersigned counsel, and pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, files this Notice of Removal and hereby removes to this Court the civil action entitled *Vidalys Pino v. Chipotle Services, LLC*, and says:

1.  Plaintiff Vidalys Pino ("Plaintiff") commenced this civil action by service of Summons and Complaint returnable to the Connecticut Superior Court, Judicial District of Hartford, *Vidalys Pino v. Chipotle Services, LLC,* HHD-CV18-6102122-S (the "State Action"). A true and correct copy of the State Action Docket Sheet, Summons, Complaint, Statement of Amount in Demand and Return of Service are attached hereto as **Exhibit A.**

2.  Chipotle was served with the Summons and Complaint by service on its registered agent. The Return of Service states that service occurred on October 14, 2018, however, this is incorrect as that date is a Sunday. Chipotle's registered agent was served on October 15, 2018.

3.  Nature of Action in Plaintiff's Complaint. The Complaint in the State Action purports to allege two causes of action related to wrongful termination, one pursuant to Conn. Gen.

Stat. § 31-51q and one pursuant to public policy. *See* Complaint, Exhibit A. The claims in the State Action are *not* nonremovable claims as described in 28 U.S.C. § 1445.

4. <u>Removal Timely</u>. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of receipt by Chipotle of the Complaint.

5. The action was pending in the Connecticut Superior Court, Judicial District of Hartford, which is within the territory of the United States District Court for the District of Connecticut.

6. Pursuant to 28 U.S.C. § 1446(a), the following process, pleadings, and orders have been served thus far in the State Action and are attached hereto: Summons, Complaint and Statement of Amount in Demand served on October 15, 2018, attached hereto as Exhibit A.

**Removal Pursuant to 28 U.S.C. § 1331**

**Federal Question Jurisdiction**

7. This Court has original "federal question" jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim under Section 31-51q of the Connecticut General Statutes. This statute holds "any employer... who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, or 4 or 14 of the article first of the Constitution of the state... liable to such employee." C.G.S.A. § 31-51q.

8. Plaintiff alleges that Chipotle is liable to Plaintiff "on account of [her] exercise of her free speech rights under United States and Connecticut Constitutions on matters of public concern." (*See* Complaint, Count One, at ¶ 31, Exhibit A).

9. The Second Circuit has made clear that federal question jurisdiction exists over § 31-51 q claims, because such claims "necessarily turn[] on some construction of federal law" and

that the federal question raised by § 31-51q claims is substantial. *See Bracey v. Board of Education*, 368 F.3d 108, 115-116 (2d Cir. 2004); *see also Vale v. City of New Haven Police Department*, No. 3:11-cv-00632, Dkt. No. 18 (PCD) (D. Conn. 2011) (denying motion to remand where plaintiff alleged violation of § 31-51q because Court must construe federal First Amendment law and evaluate its scope in deciding a claim under § 31-51q).

10. This Court has supplemental jurisdiction over the remaining state court claim pursuant to 28 U.S.C. § 1446.

11. Accordingly, the Complaint is properly removed pursuant to 28 U.S.C. §§ 1441 and 1446.

### Removal Pursuant to 28 U.S.C. § 1332(a)

### Diversity Jurisdiction

12. <u>The Court has Diversity Jurisdiction over Plaintiff's Connecticut Law Claims</u>. In the Complaint, Plaintiff asserts claims under Conn. Gen. Stat. § 31-51q and against public policy. Plaintiff's claims are properly removable under 28 U.S.C. § 1441(a) in that the district court would have original jurisdiction under 28 U.S.C. § 1332(a) (diversity jurisdiction). Under 28 U.S.C. § 1332(a), "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between – (1) citizens of different States..."

13. <u>Diversity Jurisdiction is Proper</u>. This matter is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a), and is one which may be removed to this Court by Chipotle pursuant to 28 U.S.C. 1441(a), in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

A. **Diversity Exists between Plaintiff and Chipotle**

14. Diversity of Citizenship Exists Between Parties. Plaintiff alleges that she resides in Hartford, Connecticut. (Complaint, ¶ 1, attached hereto as Exhibit A). As discussed in detail below, Chipotle is a citizen of the State of Colorado. Therefore, diversity of citizenship exists and supports removal under 28 U.S.C. § 1332(a).

15. Chipotle is a Colorado Limited Liability Company. A limited liability company is a citizen of the state it is organized under, where it has its principal place of business, and where its members reside. Chipotle is organized under the laws of Colorado, and its principal place of business is Colorado.

16. Chipotle's Sole Member is Chipotle Mexican Grill, Inc. The sole member of Chipotle is Chipotle Mexican Grill, Inc. Chipotle Mexican Grill, Inc. is incorporated under the laws of Delaware. (*See* Declaration of Esther Smiley ("Smiley Decl.") ¶ 5, attached hereto as **Exhibit B**.)

17. Chipotle Mexican Grill, Inc.'s Principal Place of Business is in Colorado. Under the "nerve center" test articulated in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010), a corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 1186 (citing *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986); *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y. 1959)). As explained below and in the attached Declaration of Esther Smiley, Chipotle's high level officers direct, control and coordinate the corporation's activities throughout the United States and internationally from its corporate headquarters in Denver, Colorado.

18. Chipotle Mexican Grill, Inc., and its affiliates, including Defendant Chipotle Services, LLC, is headquartered at 1401 Wynkoop Street, Suite 500, Denver, Colorado 80202. (*See* Smiley Decl. at ¶ 6 & Exhibit 1, Exhibit B [identifying 1401 Wynkoop Street, Suite 500, Denver, Colorado 80202 as the address of Chipotle's "Principal Executive Offices"]). Approximately 300 people are employed by Chipotle Mexican Grill, Inc. and/or its affiliates at Chipotle's corporate headquarters. (*See* id. at ¶ 6). As explained in detail below, the majority of Chipotle's executive officers and principal decision-makers are headquartered in, and work from, its Denver offices. (*See* id. at ¶ 12-23).

19. Although Chipotle does maintain a few other offices in other parts of the United States, each such office serves a limited purpose and houses a relatively small number of employees. (*See* id. at ¶ 7-11).

20. There is a presumption that Chipotle's principal place of business is located at its Denver headquarters. *See Friend*, 130 S. Ct. at 1192 (a corporation's "'principal place of business'... in practice... should normally be the place where the corporation maintains its headquarters"), 1193-94 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."; " A 'nerve center' approach, which ordinarily equates that 'center' with a corporation's headquarters..."); *Wisconsin Knife Works*, 781 F.2d at 1282 ("in the absence of any reason to think that Black & Decker's principal place of business might be in Illinois or Delaware, the two states of which the defendant is a citizen, the fact that its headquarters is in Maryland warrants an inference that the parties are of diverse citizenship.").

21. In addition to servings as its headquarters, Chipotle's Denver offices are also its "nerve center" because it is the place from which its "high level" officers direct, control, and coordinate the corporation's activities." *Friend*, 130 S. Ct. at 1186.

22. Although as of December 31, 2017 (the date reported in Chipotle Mexican Grill, Inc.'s most recently filed Form 10-K), Chipotle operated, directly or through its affiliates, more than 2,000 restaurants throughout the United States, as well as internationally (*See* Smiley Decl., ¶ 26 & Exhibit 1, Exhibit B), the operations of those restaurants are directed, controlled and coordinated by the high level officers resident in the corporation's Denver headquarters. Where, as with Chipotle, "a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." *Friend*, 130 S. Ct. at 1191 (quoting *Scot Typewriter Co.*, 170 F. Supp. at 865).

23. Chipotle's principal decision makers are its executive officers, executive directors, board of directors, and executive team directors/executive regional directors. (*See* Smiley Decl. at ¶ 13, Exhibit B).

24. Each of Chipotle's seven (7) primary executive officers frequently travels to Chipotle's corporate headquarters in order to direct, control, and coordinate Chipotle's activities and business operations. (*See* id. at ¶ 15). Chipotle's Chief Executive Officer is the principal executive officer of the organization and is responsible for the total management of Chipotle by facilitating the operation of its business while guiding its officers and employees in furtherance of the company's objectives. (*See* id. at ¶ 14). Chipotle's Chief Financial Officer is the organization's principal financial and accounting officer and is responsible for all financial, accounting, and reporting functions of Chipotle. (*See* id.). Chipotle's Chief Marketing Officer is responsible for crafting Chipotle's marketing direction and message, deepening its relationship with customers and continuing to attract new customers. (*See* id.). Chipotle's Chief Digital and

Information Officer is responsible for managing the company's technological innovations, including the development of the company's digital and mobile ordering platforms and strategy. Chipotle's Chief Communications Officer is responsible for overseeing all facets of Chipotle's internal and external communication functions. (*See* id.).  Chipotle's Chief Restaurant Officer oversees restaurant operations for Chipotle's North American restaurants.  (*See* id.).  Chipotle's Chief Human Resources Officer is responsible for managing the company's employees, including building the right corporate structure and capabilities for sustained growth, and creating a culture of recognition and innovation throughout the company.  (*See* id.).

25.     Each of Chipotle's executive directors has offices in and works from the corporation's Denver headquarters. (*See* id. at ¶¶ 16-22).  Chipotle's Executive Director of Food Safety  is responsible for overseeing the overall food safety plan throughout the United States and internationally, and works directly with employees at Chipotle's corporate headquarters, and frequently travels to Chipotle's corporate headquarters. (*See* id. at ¶ 17).  Chipotle's Executive Director of Operations Services is responsible for overseeing new restaurant openings and facilities for all of Chipotle's restaurants throughout the United States and internationally, and works at Chipotle's Denver headquarters. (*See* id. at ¶ 18).  Chipotle's Executive Director – Financial Planning & Analysis is responsible for Chipotle's financial planning and budgeting, as well as providing financial analysis support for the organizations operations and support departments, and works at Chipotle's Denver headquarters. (*See* id. at ¶ 19).  Chipotle's Executive Director of Marketing is responsible for overseeing marketing operations and implementing marketing strategies, and works in Chipotle's Northeast Regional Office in New York, New York.

26.     Chipotle's Board of Directors consists of nine (9) members, including the Chief Executive Officer.  (*See* id. at ¶ 23).  The members of the Board of Directors are responsible for

adopting policies to support the values of the corporation and its affiliates, and to provide good corporate governance for the entire corporation. (*See* id.). Chipotle's Board of Directors typically meets three or four times per year in Denver, Colorado, and one time per year in some other, varying location. (*See* id.).

27.     Chipotle also employs Executive Team Directors and Regional Directors in the eight (8) regions into which its restaurants are divided: Central North, Central South, Mid-Atlantic, Mountain Northwest, Northeast, Pacific South, Southeast, and Southwest. (*See* id. at ¶ 24). Each Executive Team Director is responsible for business operations in his or her region, and spends the significant majority of his or her time working at, and traveling between, the restaurants in his or her respective region, rather than at the regional office. (*See* id.).

28.     In addition, Chipotle's Customer Service department is divided between Chipotle's corporate Denver headquarters and the Shared Services Center in Columbus, Ohio. (*See* id. at ¶ 25).

29.     Thus, the Denver corporate headquarters of Chipotle is not simply an office where the corporation holds its board meetings or where its principal decision makers can work when they happen to be in Colorado. (*See* id. at ¶ 28; *see also Friend*, 130 S. Ct. at 1192 [A corporation's "principal place of business... should normally be the place where the corporation maintains its headquarters – provided that the headquarters is...not simply an office where the corporation holds its board meetings..."]).

30.     Although Chipotle employs over 45,000 people and operates more than 2,000 restaurants throughout the United States as well as internationally, almost all of the corporation's high level officers who direct, control, and coordinate its activities work from the Denver headquarters. As such, virtually all of Chipotle's core executive and operational functions are

carried out from its Denver headquarters. With the exception of some accounting functions that are performed by employees in Columbus, Ohio, Chipotle's major administrative functions are conducted in its Denver headquarters.

31. This evidence demonstrates that Chipotle Mexican Grill, Inc.'s "nerve center" is its Denver headquarters. *See Friend*, 130 S. Ct. at 1186 ("To support its position [that its "nerve center" was in New Jersey], Hertz submitted a declaration by an employee relations manager that... stated that the 'leadership of Hertz and its domestic subsidiaries is located at Hertz's 'corporate headquarters' in Park Ridge, New Jersey; that its 'core executive and administrative functions... are carried out' there and 'to a lesser extent' in Oklahoma City, Oklahoma; and that its 'major administrative operations.. are found' at those two locations"); *Scot Typewriter Co.,* 170 F. Supp. at 864 ("The executive offices of the defendants are located in New York; its president and Chairman of the Board, three of five Vice-Presidents, its Treasurer and Assistant Treasurer, Secretary, Comptroller, Director of Dealer Sales and Director of Installment Sale Collections all maintain offices there. Basic policy decisions are made in the New York office. The personnel, industrial relations, public relations, purchasing, rental and general services, general office sales, international, advertising and sales promotion departments are all headquartered in New York. Customer relations with respect to service, credit, and accounting, affecting sales wherever made, are administered from New York."); *Chien v. Commonwealth Biotechnologies, Inc.*, 2013 WL 2319331 (D. Conn. May 28, 2013) (finding that although defendant had offices in Connecticut and was licensed and doing business in Connecticut, defendant was actually a citizen of Virginia because its principal place of business was in Virginia and its "executive officers direct, control and coordinate its activities in... Virginia.").

**B. The Amount in Controversy Exceeds $75,000**

32.     <u>The Amount in Controversy Exceeds $75,000</u>.  For the Court to have original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), the matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs.

33.     A conservative, good-faith estimate of the value of Plaintiff's claims indicates that, if she prevails, she is likely to recover in excess of $75,000.[1]  Connecticut General Statute § 31-51q states that employers who violate the statute "shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages."  C.G.S.A. § 31-51q.

34.     Plaintiff seeks to recover, among other things, past and future lost income, damages for emotional distress, and attorneys' fees and costs. (*See* Complaint, at Count One ¶¶ 32-34 and Count Two ¶¶ 33-35).

35.     <u>Back Pay Damages</u>.  Plaintiff may be entitled to back pay as a component of her monetary damages. *See Cimmino v. Marcoccia*, 2012 WL 8420137 (Conn. Super. Ct. 2012).  Back pay in employment discrimination cases is calculated from the date of the adverse employment action until the date of judgment.  *See Nord v. U.S. Steel. Corp.*, 758 F.2d 1462, 1472-73 (11th Cir. 1985); *see also Banks v. Travelers Companies*, 180 F.3d 358, 364 (2d Cir. 1999) (ADEA context).

36.     Plaintiff's employment with Chipotle was terminated on August 22, 2017, approximately fifteen months ago. (*See* Smiley Decl. at ¶ 30, & Exhibit 2, Exhibit B).  As of her

---

[1] Chipotle does not concede that Plaintiff is likely to prevail on any of the asserted claims or that, if Plaintiff does prevail on any of the asserted claims, she is entitled to any damages, punitive damages, attorneys' fees or other relief.  Chipotle reserves the right to dispute, and to defend against, the asserted claims, both with regard to liability and all forms of requested damages and relief.  *See Lewis v. Verizon Comm., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (to establish the jurisdictional amount, a removing defendant need no concede liability for that amount).

termination, Plaintiff was paid an annual salary of $45,000.  (*See* Decl. of E. Smiley*, ¶* 30, Exhibit B).  Assuming Plaintiff's annual salary remained consistent, her damages for lost wages from August 22, 2017 through the date of this Notice of Removal would be more than $55,000.  By the time this case is resolved at trial, likely no earlier than November 2019 (a year from the date this Notice is filed), Plaintiff's unmitigated lost wages could amount to $100,232.87.  *See Savage v. Envirotest Sys. Corp.*, No. 3:96-CV-1931, 1996 WL 732551, at *3 (D. Conn. Dec. 13, 1996) (calculating plaintiff's back pay damages for 12 months through trial for purposes of determining the amount in controversy).

37.     Front Pay.  Plaintiff may also pursue a claim for front pay as a component of her monetary damages under Conn. Gen. Stat. § 31-51q and pursuant to public policy.  Here, just one year of front pay would total a minimum of $45,000, bringing Plaintiff's total back pay damages and front pay damages to approximately $145,232.87 through the date of any judgment in this matter.  Further, Plaintiff may intend to seek more than one year of front pay, which would increase the amount of her damages claims in this action.

38.     In addition to alleged lost wages and other fringe benefits, Plaintiff claims to be entitled to recover damages for emotional distress and attorneys' fees, and Plaintiff may also be entitled to punitive damages, which, taken together, yield a total amount in controversy well in excess of $75,000.

39.     Attorneys' Fees.  Where, as here, attorneys' fees are demanded (*see* Complaint, Count One ¶ 34 and Count Two ¶ 35, Exhibit A), such fees are also properly included in calculating the amount-in-controversy.  *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1079 (11th Cir. 2000); *Kimm v. KCC Trading, Inc.*, 449 F.App'x 85 (2d Cir. 2012) ("Attorneys' fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to

statute."). Again, attorneys' fees are specifically laid out as recoverable pursuant to Conn. Gen. Stat. § 31-51q. It is unlikely that Plaintiff would incur less than $75,000 in attorneys' fees if her claims were to proceed through trial.

40. <u>Emotional Distress</u>. Plaintiff seeks damages for emotional distress. (*See* Complaint at Count One ¶ 33 and Count Two ¶ 34). A plaintiff may recover emotional distress damages as a result of wrongful termination, and these damages are to be taken into account in determining the amount in controversy. *See Baron v. Maxam North America, Inc.*, 2012 WL 1247257, at *8-10 (D. Conn. Apr. 13, 2012); *see also Madigan v. Housing Authority of Town of East Hartford,* 156 Conn.App.339 (2015). Further, "emotional distress damages awards vary widely" and could well exceed the $75,000 threshold requirement. *Id*. *See also Patino v. Birken Mfg. Co.,* No. CV054016120S, 2009 WL 1624365 (Conn. Super. Ct. May 15, 2009).

41. <u>Punitive Damages</u>. If successful, Plaintiff may be entitled to recover punitive damages. Section 31-51q of the Connecticut General Statutes explicitly provides that successful plaintiffs may be entitled to punitive damages. There is no cap on punitive damages awarded under Conn. Gen. Stat. § 31-51q. "When determining the jurisdictional amount in diversity cases, punitive damages must be considered...unless it is apparent to a legal certainty that such cannot be recovered." *See Holley Equipment Co. v. Credit Alliance Corp.,* 821 F.2d 1531, 1535 (11th Cir. 1987).

42. While the Complaint does not contain a dollar figure on compensatory and punitive damages claims, and because these claims are legally available to Plaintiff, these claims "are appropriately considered in the amount-in-controversy calculation." *Kamat v. Kurtha*, 2007 WL 188738 (S.D.N.Y. Jan. 22, 2007).

43. Damages allegations similar to those being made by Plaintiff in this action have been held sufficient to satisfy the amount in controversy requirement. *See White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (holding that it was facially apparent that Plaintiff's wrongful termination claim exceeded $75,000, based on her "lengthy list of compensatory and punitive damages," including loss of pay, impaired earning capacity, emotional distress, etc., combined with a claim for attorneys' fees and punitive damages); *Aucina v. Amoco*, 871 F. Supp. 332, 334 (S.D. Iowa 1994) (the defendant showed that the amount in controversy exceeded the minimum for diversity jurisdiction where former employee asserted claims for lost wages, lost benefits, mental anguish, and punitive damages); *Baron v. Maxam North America, Inc.*, 2012 WL 1247257, at *8-10 (D. Conn. Apr. 13, 2012) (the defendant-employer showed that the amount in controversy exceeded the minimum for diversity jurisdiction where former employee asserted claims for back pay, emotional distress damages, and reasonable attorneys' fees under the CFEPA).

44. Indeed, specific jury verdicts in employment cases in Connecticut indicate that verdict awards well in excess of the jurisdictional requisite have been awarded to plaintiffs in cases alleging wrongful termination:

   a. *McClain v. Pfizer Inc.*, 2010 WL 3772813 (D. Conn. April 1, 2010): awarding plaintiff $500,000 for past noneconomic damages and $185,000 future noneconomic damages on Conn. Gen. Stat. § 31-51q claim.

   b. *Perez Dickson v. City of Bridgeport*, 2008 WL 2229651 (Conn. Super. Ct. 2008): awarding plaintiff $3,000 for economic damages, $1,000,000 for noneconomic damages, and $1,000,000 for punitive damages on Conn. Gen. Stat. § 31-51q claim.

   c. *Terri Tucker v. Journal Register East*, 2008 WL 4925070 (D. Conn. July 24, 2008): awarding plaintiff $1,000,000 in compensatory damages and $3,000,000 in punitive damages for wrongful termination and retaliation in violation of plaintiff's civil rights.

13

  d. *Shorter Jr. v. Hartford Financial Service; Rhodes*, 2005 WL 4256090 (D. Conn. Jan. 2005): awarding plaintiff $170,000 in past wages and $85,000 in pain and suffering on harassment and wrongful termination claims.

45. When the potential costs of emotional distress damages, punitive damages and attorneys' fees are added to Plaintiff's claims for lost wages, it easily becomes "more likely than not" that the amount at issue in this lawsuit far exceeds the minimum amount required for diversity jurisdiction. *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996).

46. <u>Conclusion as to Diversity Jurisdiction</u>. Because a reasonable reading of the value of Plaintiff's claims exceed $75,000, exclusive of interest and costs, and the action is between citizens of different states—Plaintiff being a citizen of Connecticut, and defendant being a citizen of Colorado—the District Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a). As a result, Plaintiff's claims may be removed to this court by Defendant pursuant to 28 U.S.C. § 1441(a).

47. <u>Venue</u>. The District of Connecticut is the judicial district embracing the place where the state court case was brought and is pending (*see* 28 U.S.C. § 86), thus, it is the proper district court to which this case should be removed. *See* 28 U.S.C. §§ 1441(a) & 1446(a). In this regard, the CT Superior Court for the Judicial District of Hartford is properly removed to the District of Connecticut. *See* 28 U.S.C. §§ 1441(a) & 1446(a).

48. <u>Notice</u>. Copies of this Notice of Removal and a separate state court Notice of Removal of Action will be filed in the State Action and served on Plaintiff's counsel.

49. <u>Signature</u>. Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal is signed by undersigned counsel pursuant to Rule 11, Federal Rules of Civil Procedure.

**WHEREFORE**, Defendant Chipotle Services, LLC requests that the action now pending against it in the Connecticut Superior Court, Judicial District of Hartford, be removed to this Honorable Court and proceed herein; that the State Court proceed no further in this litigation, and that Defendant has such other, further and different relief as this Court may deem just and proper in the premises.

                                                    **CHIPOTLE SERVICES, LLC**

By:   /s/ Glenn A. Duhl
       Glenn A. Duhl ct03644
       Zangari Cohn Cuthbertson
       Duhl & Grello P.C.
       59 Elm Street, Suite 400
       Hartford, CT 06510
       Tel.: 203-786-3709
       Fax: 203-782-2766
       gduhl@zcclawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Removal was served upon counsel for Plaintiff, Vidalys Pino, Michael J. Reilly, Esq., Cicchiello & Cicchiello, LLP, 364 Franklin Avenue, Hartford, CT 06114, mreilly@cicchielloesq.com, by email, this 13th day of November, 2018. I further certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                    /s/ Glenn A. Duhl
                                                    Glenn A. Duhl (ct03644)